## IN THE UNITED DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EFRAIN FIGUEROA MARTINEZ, GLADYS FIGUEROA, EFRAIN FIGUEROA Jr., LESTER FIGUEROA, ELIAS FIGUEROA and GABRIELLA FIGUEROA<br><br>Plaintiffs,<br>v.<br><br>HOTEL PLAZA LAS DELICIAS, INC. also known as or d/b/a/ HOTEL PONCE PLAZA AND CASINO, UNIVERSAL INSURANCE COMPANY, INC., JOHN DOE, COMPANY XYZ<br><br>Defendants. | Civil No.<br><br><br><br><br>Torts Claim,<br>Jury Trial Requested |

## COMPLAINT

**TO THE HONORABLE COURT:**

    **COMES NOW**, plaintiffs Efrain Figueroa Martínez, (hereinafter, "plaintiffs" or "Mr. Figueroa"), Gladys Figueroa, (hereinafter, "plaintiffs" or "Mrs. Figueroa"), Efrain Figueroa Jr., (hereinafter, "plaintiffs" or "Mr. Figueroa Jr."), Lester Figueroa, (hereinafter, "plaintiffs" or "Mr. L. Figueroa"), Elias Figueroa, (hereinafter, "plaintiffs" or "E. Figueroa"), Gabriella Figueroa, (hereinafter, "plaintiffs" or "G. Figueroa"), through the undersigned legal representation, and very respectfully state, request and pray:

### I. NATURE OF ACTION, JURISDICTION AND VENUE

1. This is an action to recover damages for defendant's willful and negligent acts, which resulted in a 92-year-old plaintiff injuries and emotional distress, and a completely ruined family reunion in the planning for at least one year before said event.

2. This Court has subject matter jurisdiction over this action under 28 U.C.S. § 1331 and 28 U.C.S. § 1332. In this claim, the Plaintiffs all live in California and Arizona, and the

defendants are corporations organized and under Puerto Rico laws, and the amount at stake is for at least $1,804,433.60.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) (1), (b) (2) and (c) (2) and 28 U.S.C. § 1400(a) because this is the district in which the defendant reside or are authorized to do business; a substantial part of defendants negligent actions have occurred in this district and all claims arose in this district.

## II. PARTIES

4. The plaintiff, Mr. Efrain Figueroa Martínez, is a natural person and resident of California. His physical and postal address is: 4903 Shady Trail St. Simi Valley, California 93063. His telephone number is: (818) 571-3041. At the time of the slip and fall, Mr. Efrain Figueroa Martinez was resident of Buda, Texas, 590 FM 967, APT. 1304. At all times relevant to this action, Mr. Figueroa is the person who has been suffering pain from physical injuries and emotional distress, because a shower chair provided by Hotel Ponce Plaza broke while Mr. Figueroa was taking a shower, and fall and hit the floor at the defendant's hotel room.

5. The plaintiff, Mrs. Gladys Figueroa, is a natural person and resident of California. Her physical and postal address is: 4903 Shady Trail St. Simi Valley, California 93063. Her telephone number is: (818) 571-3041. At the time of the slip and fall, Mrs. Gladys Figueroa was resident of Buda, Texas, 590 FM 967, APT. 1304. At all times relevant to this action, Mrs. Figueroa is the wife of Mr. Figueroa, and has been suffering financial challenges, pain and emotional distress, because a shower chair provided by Hotel Ponce Plaza broke while her beloved husband, Mr. Figueroa, was taking a shower, and fall and hit the floor at the defendant's hotel room.

6. The plaintiff, Mr. Efrain Figueroa Jr., is a natural person and resident of Simi Valley, California. His physical and postal address is: 4903 Shady Trail St. Simi Valley, California 93063. His telephone number is: (818) 571-3041. At all times relevant to this action, Mr. Figueroa Jr. is one of Mr. Figueroa's children's, and has been suffering financial challenges, pain, and emotional distress, because a shower chair provided by Hotel Ponce Plaza broke while his father, Mr. Figueroa, was taking a shower, and fall and hit the floor at the defendant's hotel room.

7. The plaintiff, Mr. Lester Figueroa, is a natural person and resident of Chandler, Arizona. His physical and postal address is: 2102 East Horseshoe Place, Chandler, Arizona 85249. His telephone number is: (703) 597-5858. At all times relevant to this action, Mr. L. Figueroa is one of Mr. Figueroa's children's, and has been suffering financial challenges, pain, and emotional distress, because a shower chair provided by Hotel Ponce Plaza broke while his father, Mr. Figueroa, was taking a shower, and fall and hit the floor at the defendant's hotel room.

8. The plaintiff, Ms. Gabriella Figueroa, is a natural person, of legal age and resident of, California. Her physical and postal address is: 4903 Shady Trail St. Simi Valley, California 93063. Her telephone number is: (818) 568-3635. At all times relevant to this action, Ms. G. Figueroa is one of Mr. Figueroa's grandchildren's, because a shower chair provided by Hotel Ponce Plaza broke while her grandfather, Mr. Figueroa, was taking a shower, and fall and hit the floor at the defendant's hotel room.

9. The plaintiff, Mr. Elias Figueroa, is a natural person, of legal age and resident of Simi, California, represented in this action by his father, Mr. Figueroa Jr. His physical and postal address is: 4903 Shady Trail St. Simi Valley, California 93063. His telephone number is: (818) 568-9307. At all times relevant to this action, Mr. E. Figueroa is one of Mr. Figueroa's grandchildren's, because a shower chair provided by Hotel Ponce Plaza broke while his grandfather, Mr. Figueroa, was taking a shower, and fall and hit the floor at the defendant's hotel room.

10. The co-defendant HOTEL PLAZA LAS DELICIAS, INC. also known as HOTEL PONCE PLAZA AND CASINO (hereinafter referred as "HOTEL PONCE PLAZA"), is a domestic corporation, organized and existing under the laws of Puerto Rico, with address at Calle Reina, Esquina Méndez Vigo y Unión, Ponce, P.R. 00731. Its agent and administrator are Mr. MUÑOZ. It is dedicated to the lodging industry.

11. The co-defendant UNIVERSAL INSURANCE COMPANY, INC., ("UNIVERSAL") is also an organized and existing domestic corporation under the laws of Puerto Rico, with address at P.O. Box 71338, San Juan, Puerto Rico 00936-8483. It is dedicated to the insurance industry. At all times pertinent to this action, UNIVERSAL INSURANCE COMPANY, INC., is the insurance company for defendant's, and has an insurance policy

issued in favor of HOTEL PONCE PLAZA which covers the damages caused by defendant's fault and negligence action.

12. As a defendant, HOTEL PONCE PLAZA is accumulated as the one who's negligent acts of providing an unsafe shower chair for a senior person, without due inspection as to the condition and certainty of the shower chair's integrity, which resulted in the shower chair breaking and Mr. Figueroa falling to the floor while he was taking a shower, and a head and body injuries, have failed to act as a reasonable person would have acted. Clearly, defendant HOTEL PONCE PLAZA had a duty to act, since Mr. Figueroa is a 90 years-old person and requested as a accommodation a shower chair, so he could take a safe shower. Defendant HOTEL PONCE PLAZA omissions resulted in damages for this entire family, that were reasonably foreseeable to the defendant, so the negligent acts or omissions of defendant were the adequate cause of the harm suffered by plaintiffs.

13. John Doe, of whom his real identity is unknown to this date, is accumulated as the one responsible to the Plaintiffs, who's negligent acts of providing an unsafe shower chair for a senior person, without due inspection as to the condition and certainty of the shower chair's integrity, which resulted in the shower chair breaking and Mr. Figueroa falling to the floor while he was taking a shower, and a head and body injuries, have failed to act as a reasonable person would have acted.

14. Company XYZ, entity that its real identity is unknown to this date, it is responsible to the Plaintiffs for their omission to verify the equipment and proper maintenance of it, to ensure the safety and well-being of the guests who request and require them, as part of the accommodation necessary for people with disabilities, among other aspects.

## II. THE FACTS

15. Mr. and Mrs. Figueroa were residents of Austin Texas, when they began planning a family reunion to be held on March 15, 2019, at Vistas Restaurant, in Ponce, Puerto Rico, so they can reunite Mrs. Figueroa's sisters with her, and to celebrate Mr. Figueroa's birthday. For this celebration, they invited at least 40 to 50 family members, and invested thousands of dollars. The activity was planned with expectations of reuniting the family members from different places, among others, several states in the United States and Puerto Rico, for which accommodations in the Hotel were planned months in advance.

16. As part of the activity and lodging accommodations for family members and friends traveling to the event in Ponce, Mr. Figueroa Jr. coordinated in advance with the hotel specific accommodations for the elderly, including, but not limited to rooms for the handicapped and a shower chair.
17. A few hours before the family reunion dinner and festivities at the Vista Restaurant in Ponce, Mr. Figueroa Jr. was helping his dad, Mr. Figueroa, to take a shower, when suddenly the chair provided by the Hotel Ponce Plaza broke and Mr. Figueroa, who was at that time 91-year-old, suffered a fall, with a head injury, scared, disoriented, and confused, due to damage of the equipment provided by the Hotel.
18. Mr. Figueroa Jr. reports the incident to the front desk, and paramedics were summoned. They took Mr. Figueroa's blood pressure and it was high. At this time, Linda Pacheco, director of Hotel Ponce Plaza was present.
19. Due to his critical medical condition caused by the incident, Mr. Figueroa was immediately taken in ambulance to Dr. Pila hospital in Ponce, and remained from March 15, 2019 until April 4, 2019, being placed twice in the Intensive Care Unit (ICU) due to his critical condition.
20. When transferred to the ER, doctors there noticed that, due to the incident suffered at the Hotel, he had suffered a heart attack, his hemoglobin went down and his kidney level dropped to 15. This caused him to receive blood transfusion and dialysis, to the point that he needed critical care. He was intubated and very critical. His life was threatened.
21. Mr. Figueroa's condition caused by the accident suffered at the Hotel, left him weak to the point that he lost 24 pounds, dropping from 153 to 129 pounds, in less than 3 weeks and is now faced with undergoing Dialysis for the rest of his life due to End Stage Renal Disease exacerbated by the injury suffered from the break of the shower chair, provided by the Hotel. Since then, Mr. Figueroa has been unable to recuperate his weight; he is now weighing 137 pounds as well as he is actually suffering of other several medical conditions due to said accident.
22. What began as a 2 week vacation for Mr. Figueroa and Mrs. Figueroa, became a medical nightmare lasting more than two months of hospitalization and rehabilitation, which to this day has not been effective. Mr. Figueroa's Doctor, Tirso Pena at Dr. Pila hospital,

suggest to Mr. Figueroa Jr. that he must contact his siblings because his father might not survive due to the accident suffered at the Hotel.

23. As a result, Mr. L. Figueroa had to fly from Arizona to Puerto Rico, and arrived within 24 hours while their sister Valerie Figueroa was unable to come as she was with a newborn baby, staying with the uncertainty and anguish of the situation.

24. When Mr. Figueroa tell his grandchildren, Mr. Elias and Ms. Gabriella Figueroa got very concerned, worried and stressed. They took care of their grandmother and tried to distract her taking her to the planned activity, a couple of hours ahead.

25. Elias had to take over of his dad's role in the activity. Thus him and his sister, Gabriella had to improvise a speech for the 4 sisters (including their grandmother) that was supposed to do Mr. Figueroa Jr. This caused stress and anguish because Spanish is not their first language.

26. They both had to put a smiling face, although very much concerned for their grandfather's health and not being able to spend that so planned event with their Father. But they had to make sure their grandmother was ok and distracted.

27. Mr. Elias and Ms. Gabriella were very sad because the birthday celebration planed for their grandfather, Mr. Figueroa was not going to be enjoyed by him.

28. They had to see and hear the Trio that was contracted as a surprise for his grandfather in his absence trying not to cry so that their grandmother didn't seem them suffer and get concerned. They had to make a big effort to stay calmed and make the best out of an long term planned family reunion that was planned not only reunite the sisters of their grandmother but to celebrate the life of their grandfather that was now in the hospital.

29. Important to mention that they both were looking toward this reunion because they had not had the opportunity to meet some family members and spend time with other family members, they had not seen for more than 15 years. This was a significant, memorable event much desired and planned, totally ruined by the accident caused by the Hotel.

30. Before the fall. Mr. Elias and Ms. Gabriella Figueroa were supposed to travel back home with their father. It was not possible, they had to leave their father and grandparents in PR, concerned and anguished due to the critical health condition that was their grandfather.

31. Because of Mr. Figueroa's fall, the family reunion of March 15th, of 2019 did not meet with its whole objective because Mr. Figueroa was not there to celebrate his birthday, enjoy the music of the Trio and celebrate with his family, which he had not seen for years, among other things.
32. Mr. Figueroa Jr. suffered this as well. He really was looking forward to see his children celebrate and spend time with family members long time not seen. He missed the opportunity of spending time with his aunts and family that day.
33. Prior to the fall, Mr. Figueroa was exited for the activity, he played dominos and cards with his spouse's sisters and nieces. He laughed and would talk about the celebration to come. Specially because he was going to see his brothers that lived here in PR and had not seen for years. This was all ruined to the fall provoked by the broken chair given by the hotel.
34. Since the fall caused by the negligence of the Hotel, Mr. Figueroa's health deteriorated significantly. As a matter of fact, prior to the accident, he came to PR walking by his own feet, and due to the accident, left the hospital without being able to walk. He was very week, needed a special diet, a position bed and needed physical therapy. For this reason, the doctor did not authorize him to travel back home and recommended to be transferred to a nursing home.
35. After a search, the family decided to take him to Ebenezer Nursing Home.
36. He had to be transferred in ambulance to take his dialysis, treatment that was not necessary prior to the accident suffered.
37. The family struggled trying to find the physical therapy he needed. It was hard to find.
38. Due to this, Mr. Figueroa Jr. was forced to stay in P.R. to care for his mother while they both went daily to the hospital and 3 weeks later to the Ebenezer Nursing Home to care for his father; where he had to stay for 6 weeks, paying $3,600 for two months.
39. Not only did Mr. and Mrs. Figueroa have to incur in Nursing Home care expenses, but they had to incur in medical and ambulance travel expenses, medications, and others. Mrs. Figueroa had to additionally incur in food expenses while Mr. Figueroa was treated in PR.
40. Mr. Figueroa Jr. had to incur in food expenses, gasoline and extend car rental agreement from two weeks to two and a half months.

41. Mr. L Figueroa had to incur in food and flight expenses due to his father's fall and take time off from work to be able to take care of his parents while in PR.
42. This situation brought stress, sadness, emotional and economic burden to the whole family.
43. During this period, Mrs. Figueroa, was emotionally and physically suffering not only worrying her husband would die, but the stress took a toll on her to the point of her going to Emergency at Dr. Pila and twice to Urgent Care for a Urinary Tract Infection thought to be caused by stress and crying many nights worried her husband would die in Puerto Rico.
44. This also caused a loss of potential acting income anywhere from $90-$120,000.00 to Mr. Figueroa Jr., as he is a working Actor in Los Angeles, Ca. After just having completed the filming of a new TV Pilot in Atlanta which much of his $50,000 fee was unexpectedly and suddenly spent during the months of March, April and beginning of May, 2019, causing extreme hardship on his family of two college age children and his wife going to nursing school in Los Angeles, where they live.
45. On May 5th Mr. Figueroa Jr. Had to travel to California to solve personal matters. His brother, Mr. L. Figueroa, had to travel again to PR to substitute him in the care of his parents.
46. Mr. Figueroa Jr. and his parents hoped to leave Puerto Rico by April 18th, 2019, but the doctor did not authorize a travel outside Puerto Rico due to the critical condition of Mr. Figueroa.
47. As a matter of fact, prior to the fall, Mr. Figueroa was able to walk on his own and exercise moderately.
48. Prior to the fall Mr. and Mrs. Figueroa lived on their own in Buda, Texas, traveled together on their own and were independent. They were able to travel from Texas to attend to their grandchildren's high school graduation, visit their sons in Arizona and California.
49. After the fall Mr. and Mrs. Figueroa's life changed dramatically. Mr. Figueroa lost his independence. Mr. and Mrs. Figueroa were unable to live on their own since then.
50. This caused Mr. And Mrs. Figueroa a tremendous financial hardship and forced them to move from Buda, Texas to Arizona.

51. Therefore, upon the doctor's authorization to travel back home, Mr. and Mrs. Figueroa traveled to Arizona on May 9th, 2019, with their son Lester because Mr. Figueroa now needed special attentions, physical and medical. Mrs. Figueroa became very disoriented and confused. They both needed to be close to their son.
52. The cost of assisted living in Arizona was extremely high for Mr. and Mrs. Figueroa for which after 3 months there, they moved to California with their other son, to an assisted living facility but due to their physical and medical needs they had to be transferred to live with their son, Mr. Figueroa Jr. in his house. This caused stress and accommodation issues at the home of Mr. Figueroa Jr. Therefore, Mr. Figueroa Jr had to make arrangements to get a bigger home, with additional rooms to accommodate to the medical and physical needs of his parents.
53. The assisted living facility cost in California was $5,200 per month.
54. Both Gladys & Efrain continue to be confused, disoriented and unsure of their surroundings because of this traumatic experience, which has also affected their sense of location and memory.
55. This whole situation has caused economic, mental and emotional sufferings to the family.
56. Mr. Figueroa's grandchildren each claim $50,000 in compensation for mental and emotional sufferings.
57. Mr. and Mrs. Figueroa each claim $500,000 in compensation for mental and emotional sufferings.
58. Mr. Figueroa Jr. claims $250,000 in compensation for mental and emotional sufferings.
59. Mr. L. Figueroa claims $250,000 in compensation for mental and emotional sufferings.
60. In expenses and economic loss we estimate a compensation amount of $204,433.60.

### III. CAUSES OF ACTION

FIRST CAUSE OF ACTION:

OBLIGATION WHICH ARISE DUE TO FAULT AND NEGLIGENCE – ARTICLE 1802 OF THE CIVIL CODE LAW (P.R.)

1. Each and every one of the allegations contained in the preceding paragraphs are incorporated and adopted by reference.

2. Article 1802 provides for a cause of action stemming from individual's negligent acts. See Article 1802 of the Civil Code Law, 31 L.P.R.A. § 5141. P.R. Laws Ann. tit. 31, §5141.

3. The statute states in pertinent part that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." See Article 1802 of the Civil Code Law, 31 L.P.R.A. § 5141. P.R. Laws Ann. TIT. 31, §5141.

4. A claim under Article 1802 requires that the plaintiff prove three *prima facie* elements: "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." Acevedo-Reinoso v. Iberia Lineas Aereas de Espana S.A., 449 F.3d 7, 15 (1st Cir. 2006) (quoting Irvine, IRG. V. Murad Skin Research Labs, Inc., 194 F.3d 313, 321-322 (1st Cir. 1999)

5. Defendant HOTEL PONCE PLAZA negligent acts or omissions of providing an unsafe shower chair for a senior person, without an inspection about the conditions and certainty of the shower chair integrity, which resulted in the shower chair breaking and Mr. Figueroa falling to the floor while he was taking a shower, have caused damages and emotional distress to plaintiffs.

6. Defendant HOTEL PONCE PLAZA have failed to act as a reasonable person would have acted.

7. Clearly, defendant HOTEL PONCE PLAZA had a duty to act, since Mr. Figueroa is a 90 years-old person and requested as a accommodation a shower chair, so he could take a safe shower.

8. Defendant HOTEL PONCE PLAZA omissions resulted in damages for this entire family, damages that were reasonably foreseeable to the defendant.

9. Defendant HOTEL PONCE PLAZA negligent acts or omissions were the adequate cause of the harm suffered by plaintiffs.

10. The co-defendant Insurance Company (Universal), is jointly and severally liable for damages caused by the negligence of the Hotel. This entity knew, or should have known, in the negligent way in which the operation and business were taking place at the Hotel, and took no affirmative action to prevent it, causing this damage suffered and claimed by the plaintiffs.

11. Company XYZ, is jointly and severally liable for damages caused by the negligence of the Hotel. This entity knew, or should have known, in the negligent way in which the operation and business were taking place at the Hotel, and took no affirmative action to prevent it, causing this damage suffered and claimed by the plaintiffs.

12. As a matter of fact, all defendants included in this complaint, are directly and jointly responsible to plaintiffs. An equipment for persons with disabilities was handed over which was not in optimal condition, which because of this, broke, causing a serious fall to plaintiff Rodriguez, being the direct cause of all the damages claimed in this lawsuit.

### III. JURY DEMAND

13. Plaintiffs hereby request trial by jury.

**WHEREFORE**, plaintiff requests that the Court enters judgment ordering defendant to: pay damages, grant the costs, and any other remedy in favor of the plaintiff that proceeds in equity and / or law, including all statutory remedies and or those provided justice and equity.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today March 15, 2021.

s/Reinaldo L. Maldonado Vélez
USDC-PR. No.: 219101
COSVI Office Complex
Esq. Ave. Americo Miranda 400
Edificio Original Local B
Rio Piedras, PR 00927
Ph. 787-625-1948 / 787-625-1949
E-mail: rmaldonado@rmvlaw.net


s/Arlene Rivera Benítez
USDC-PR. No.: 221911
RUA 13953
P.O. Box 152
Mercedita, PR 00715
(787) 841-3363
(787) 841-3344
(787) 466-7267 (m)

s/Victor R. Rodriguez Fuentes Esq.
USDC-PR. No.: 216705
Partner
Rodríguez & Maldonado Vélez, P.S.C.
COSVI Office Complex
Ave. Americo Miranda # 400
Edificio Original, Local B
Rio Piedras, PR 00927
Tel. (787) 625-1948
Fax (787) 625-1949
vrodriguez@rmvlaw.net